E-FILED
Thursday, 25 March, 2021  03:17:33 PM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| JAMIE C., on behalf of J.F., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 19-cv-1147-JES-JEH |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## <u>ORDER</u>

This matter is now before the Court on Plaintiff's Objection (Doc. 25) to the Report and Recommendation (Doc. 20) from Magistrate Judge Hawley. For the reasons set forth below, the Court adopts the Magistrate Judge's Report and Recommendation (Doc. 20), grants Defendant's Motion (Doc. 18) for Summary Judgment, and denies Plaintiff's Motion (Doc. 17) for Summary Judgment.

## BACKGROUND[1]

Plaintiff, Jamie C., on behalf of her son, J.F., filed an application for supplemental security income in February 2011, alleging J.F. was disabled from his date of birth, November 12, 1998. Plaintiff's claim was denied initially and upon reconsideration, and a hearing was held before an Administrative Law Judge ("ALJ") in November 2012. Jamie declined legal representation to assist her at that time and has litigated this matter pro se throughout both the administrative proceedings and here in the district court. Both Jamie and J.F. testified at the 2012 hearing. Later that year, the ALJ issued an unfavorable decision which Jamie appealed. The Appeals Council ("AC") subsequently denied her request for review in April 2014. Jamie

---

[1] The following facts are derived from the Magistrate Judge's Report and Recommendation (Doc. 20).

subsequently filed a lawsuit in this district which resulted in a remand to the Social Security

Administration ("SSA").

Upon remand, another hearing was held before a different ALJ, Hon. Shreese M. Wilson,

in March 2016 where Jamie, J.F., and J.F.'s father testified. However, at the time of the hearing,

Jamie declined to sign authorization forms so updated medical and school records could be

obtained. The ALJ therefore reevaluated the evidence through 2012 and issued an unfavorable

decision in July of 2016, noting that a proper evaluation of disability after that date was not

possible due to a lack of cooperation. On appeal, the AC remanded the case to the ALJ, finding

that Plaintiff's refusal to cooperate was not a basis for not making findings on the severity of

impairments since 2012, but nevertheless instructing Plaintiff of her duty to assist the ALJ in

developing the record.

On May 4, 2018, ALJ Wilson held a third hearing on J.F.'s SSI claim. At this time J.F.

was no longer a minor. Jamie, J.F., and a vocational expert ("VE") testified at the hearing. J.F.

testified he was 19 years old and lived in a house with his parents and grandparents. He did not

have a driver's license as he believed he would not be able to learn how to drive, though he had

never tried. J.F. confirmed he was in special education classes all four years of high school.

Jamie testified that J.F. was placed in a one-on-one emotional disability classroom and he

dressed for physical education in the nurse's station because he could not go to the locker rooms.

Jamie explained J.F. only graduated at the eighth grade level, but confirmed J.F. received a high

school diploma. He did not want to go to college because he had trouble in high school and

thought it not worth the trouble. Jamie questioned how her son would take going through the

hallways at college "with all those people, and all those sounds when he can't even go to a

restaurant." AR 1179. He had not tried to look for work as "I know I won't be able to hold [a

job].” AR 1162. He said his sensory issues and “messed up” sleep schedule kept him from

holding a job. *Id*. Jamie did not take medicine and did not see a doctor. Jamie added that they

tried medication with J.F. when he was younger but there were too many side effects.

J.F. elaborated on his sensory issues, testifying that light made him “kind of” pushy and

irritable, and sound made him “kind of” nervous and pushed him “away from the general area if

the noise level is too high.” *Id*. Jamie interjected that his sensory issues were triggered

“[e]specially [with] change in environment.” AR 1163. J.F. added that his sensitivity to sound

made him “a little bit aggressive.” *Id.* He said his nervous energy made him annoy others in that

they would get up and walk away from him. He said he caused that annoyance to others over 100

times in one year. J.F. added that he had touch issues as well and if something came into contact

with his skin, it “rile[d]” him up. AR 1165. Jamie explained J.F. was diagnosed in seventh grade

and re-diagnosed in the most updated records with sensory integration disorder, or sensory

modulation disorder. Per Jamie, J.F. did not take any medication for that disorder because there

was not any except for controlling the environment. J.F. took supplements and he mostly stayed

in one room where the lights and sound were controlled, and “stuff” was not moved around. AR

1166. J.F. stated that doing all those things was not enough to fully control his disorder. Jamie

stated J.F.’s ability to do “stuff” was dependent upon his environment. AR 1171. Jamie also

testified J.F. was a “ticking time bomb” when his sensory issues were set off. AR 1181. She

described one incident when J.F. “just went off” about a toothbrush and Jamie called the police.

After the police came to their house and told J.F. to calm down, he “shaped up, never did it

again.” AR 1184.

Jamie also testified that J.F. was “tactile defensive” as part of his sensory issues; “it’s

basically where you’re constantly on guard, like you’re in a high – it’s kind of like a fight or

3

flight response." AR 1173. Jamie stated J.F.'s sleep issues were triggered by his tactile

defensiveness as he was constantly on guard. According to Jamie, the school psychologist told

them there was no medication to treat J.F.'s tactile defensiveness. Though J.F. was not on ADHD

medication when he was in school, he was able to get his school work done and graduate, "but

barely." AR 1176.

J.F. testified that he occupied his time playing video games on his PlayStation 4 or his

computer. He played the games by himself as he did not have the PlayStation network. Friends

"very, very rarely" came over to play the games with J.F. Jamie commented J.F.'s good friend

last came over about seven months before the hearing. Because of his sensory issues, J.F. always

turned the volume down on his games. J.F. said he got bored sometimes playing video games all

day. He thought he could play video games all day but not work because "games and real life

work are absolutely two different things." AR 1188. Jamie said he could play video games all

day because he was in a controlled environment. J.F. said he hated to leave his house and was

"basically dragged" out of the house to come to the hearing. AR 1189. Upon the ALJ pointing

out that he seemed calm and okay during the hearing, J.F. said he was trying to be okay.

According to J.F., he wanted to make YouTube videos but did not have the right recording

software to do it. According to Jamie, J.F. did not understand it though others tried teaching it to

him.

Jamie added that in order for J.F. to function in a one-on-one classroom, he still had to

have several accommodations including a scribe for longer assignments, frequent breaks, small

group administration, oral and written directions, frequent redirection, and notification when

there was a change in routine schedule. She again testified that there was nothing else to do

except try to control J.F.'s environment to stop certain behaviors from occurring. She confirmed

4

J.F. did not go to a psychiatrist or psychologist outside of the school setting because "all of his

needs were being met at school." AR 1194.

The ALJ then questioned the VE. The VE was asked to consider the following

hypothetical individual:

> An individual that's the same age that the claimant is. So this individual is 19. This
> individual has no exertional, postural, manipulative or environmental limitations.
> However, this individual would be limited to tasks that can be learned within 30
> days that are routine in nature.
>
> This individual should be in an environment that's low stress in nature. I'm going
> to define low stress as no more than occasional decision making or changes in a
> work setting. So every day when they go to work they know what their work tasks
> are, and they're basically unchanging.
>
> Additionally, this individual should be in an environment that the production
> expectations are shift or day-based. There should be no hourly production quotas
> for this individual. This individual should be in an environment that requires no
> more – no interaction with the general public, and no more than occasional
> interaction with coworkers or supervisors.

AR 1195-96. The VE identified a variety of jobs such a hypothetical individual could perform at

the medium unskilled level, the light unskilled level, and the sedentary unskilled level. The ALJ

added to the hypothetical that the individual needed to avoid concentrated exposure to excessive

noise. The VE testified that jobs remained, though numbers of jobs were reduced. Next, the ALJ

added that the individual needed to be in an environment where the tasks could be easily

resumed after momentary distraction. The VE responded that all those jobs would "meet the

standard of being able to be usually be [sic] done." AR 1198. The ALJ added further limitation

that the hypothetical individual needed to be in an environment that did not require tandem tasks.

The VE testified the jobs remained. The VE testified all jobs would be eliminated if the

individual became distracted and lost 15 percent productivity above normal work expectations on

a regular and continuing basis. The individual's ability to maintain the identified jobs would not

be affected if the individual would need a supervisor to come by on an hourly basis every day, eight hours a days, five days a week to make sure that the tasks were being performed and performed to industry standard. The individual would not be able to maintain employment beyond a few months if he routinely had unscheduled absences two days per month. Finally, if the individual were set off at work and became frustrated and upset and reached the point where it affected others or his own ability to meet productivity standards, employment would be eliminated.

The record the ALJ considered included evidence dated between 2004 and 2018. The plethora of record evidence discussed included: J.F.'s IQ scores; his Individualized Educational Plans ("IEP") from several years; the testimony at all three hearings; J.F.'s grades transcripts; his withdrawal from school to be homeschooled and his return to school; his school attendance records; various intelligence test results; the reasons for his placement in special education; and his school disciplinary records. The ALJ further considered: disability reports; teachers' observations of J.F. throughout his school years; the accommodations put into place to assist J.F. and the improvement or lack of improvement from those; J.F.'s behavioral issues and the circumstances under which they improved; services J.F. received at school for his learning and behavioral issues; and J.F.'s improvement at school during particular spans of academic years. The ALJ throughout the Decision pointed out inconsistencies between testimony and record evidence as well as the lack of medical records from more recent years.

In her consideration of functional equivalence for purposes of J.F.'s childhood disability claim, the ALJ addressed the State Agency psychological consultants' May and September 2011 opinions. Those State Agency psychologists found: less than marked limitation in the first functional domain; less than marked limitation in the second functional domain; one consultant

found marked limitation and one found no limitation in the third functional domain; no limitation in the fourth functional domain; less than marked limitation in the fifth functional domain; and one consultant found less than marked limitation and the other found no limitation in the sixth and final functional domain. The ALJ found J.F. had less than marked limitation in all but the third functional domain, where she found marked limitation.

In her summary judgment motion, Jamie argued: 1) "the ALJ errored [sic] at step 2 finding for Children and Adult, by improperly interrupting [sic] non-medical evidence as medical and medical as non-medical;" 2) the "ALJ did not discuss all medically diagnosed conditions and improper weight given"; 3) "the ALJ used regulations that were no longer applicable;" 4) "the ALJ went into the forbidden array [sic] of playing Dr. by substituting her own opinion for that of a Dr.;" 5) "the ALJ errored [sic] at step 3 by combining both medical and functional equivalency because medical was listed as non-medical;" 6) "the ALJ does not give specific reasons for not giving weight to certain evidence;" 7) "the ALJ did not do a combined impairment assessment, as the whole child approach is required;" 8) "the ALJ asked the Vocab [sic] expert hypothetical questions that the claimant has evidence he cannot do;" and 9) "Social Security did not send over the claimant's medical and functional records to the examining consultant." Plf's MSJ (Doc. 17 at pg. 18).

In her Objection to the Magistrate Judge's Report and Recommendation, Jamie argues:

1. Judge Hawley omitted the complete list of J.F.'s educational accommodations. (Doc. 25, at 2);

2. Judge Hawley erred when he found the ALJ did not present any questions to the VE that the claimant was not able to do. (*Id*. at 5);

3. Judge Hawley erred in accepting the ALJ's conservative assessment of the number of absences J.F. would have from work. (*Id*. at 12);

4. Judge Hawley erred when he found the ALJ built a logical bridge to the conclusion J.F. was not disabled. (*Id*. at 15);

5. Judge Hawley erred regarding the ALJ's finding that the consulting examiner did not diagnosis J.F.'s sensory disorder. (*Id*. at 16);

6. Judge Hawley erred in agreeing with the ALJ's justification for not providing the most recent records to the consulting examiner. (*Id*. at 17);

7. Judge Hawley erred when finding the ALJ did not "play doctor." (*Id*. at 18);

8. Judge Hawley erred in assessing the ALJ's finding that sensory modulation disorder was not an objective medical finding because a teacher's assessment or a self-assessment is not objective medical evidence. (*Id*. at 20);

9. Judge Hawley erred in assessing the ALJ's finding that school records did not demonstrate the extreme difficulties alleged by the claimant and his mother. (*Id*. at 22);

10. Judge Hawley erred by not reweighing the evidence to arrive at a different conclusion than the ALJ. (*Id*. at 36);

11. Judge Hawley erred in agreeing with the ALJ that medical weight should not be given to claimant's OT therapist's evaluation and the error was not harmless. (*Id*. at 38–39);

12. The Court should reweigh the evidence. (*Id*. at 41);

13. Judge Hawley erred in finding the ALJ's less than marked limitation in social functioning was appropriate where the ALJ made credibility determinations and referenced J.F.'s ability to play video games. (*Id*. at 45);

14. Judge Hawley erred in accepting the weight the ALJ assigned to J.F.'s behavioral problems. (*Id*. at 49);

15. Judge Hawley erred in finding that one note in the record did not undermine the ALJ's finding of moderate impairment and understanding and applying information where the ALJ did not ignore evidence contrary to her finding. (*Id*. at 60);

16. Judge Hawley erred in accepting the ALJ's weighing of conflicting evidence regarding J.F.'s academic abilities. (*Id*. at 66–67);

17. Judge Hawley erred regarding the ALJ's sensory profile analysis. (*Id*. at 68).

## LEGAL STANDARD

"The final determination of the Commissioner of Social Security after a hearing under [42 U.S.C. § 1383(c)(1)] shall be subject to judicial review as provided in section 405(g) of [Title 42] to the same extent as the Commissioner's final determinations under section 405 of [Title 42]." 42 U.S.C. § 1383(c)(3). Pursuant to 42 U.S.C. § 405(g), the Commissioner's findings must be sustained by the Court if they are supported by "substantial evidence." 42 U.S.C. § 405(g). The Court's function on review is not to try the case de novo or to supplant the ALJ's findings with the Court's own assessment of the evidence. *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Pugh v. Bowen*, 870 F.2d 1271 (7th Cir. 1989). Indeed, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Although great deference is afforded to the determination made by the ALJ, the Court does not "merely rubber stamp the ALJ's decision." *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). The Court's function is to determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986). Substantial evidence is defined as such

relevant evidence as a reasonable mind might accept as adequate to support the decision.

*Richardson v. Perales*, 402 U.S. 389, 390 (1971), *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

## DISCUSSION

The Court has reviewed Plaintiff's Objection and has attempted to identify each argument Plaintiff advances regarding Judge Hawley's Report and Recommendation. *See* Background, *supra*. The Court will address each argument in turn.

1. **Judge Hawley omitted the complete list of J.F.'s educational accommodations. (Doc. 25, at 2)**

Plaintiff's first apparent disagreement with Judge Hawley's Report and Recommendation stems from the fact Judge Hawley set forth a non-exhaustive list of J.F.'s classroom accommodations: "Jamie added that in order for J.F. to function in a one-on-one classroom, he still had to have several accommodations *including* a scribe for longer assignments, frequent breaks, small group administration, oral written directions …." Doc. 20, at 5 (emphasis added). By using the term "including," the Magistrate Judge clearly indicated his list was non-exhaustive, and in any event, Plaintiff fails to explain how Judge Hawley's failure to include the entire list of accommodations in his Report and Recommendation prejudiced Plaintiff. This objection is without merit.

2. **Judge Hawley erred when he found the ALJ did not present any questions to the VE that the claimant was not able to do. (*Id*. at 5)**

Plaintiff next takes issue with the hypotheticals the ALJ posed to the VE and the ALJ's subsequent RFC finding. Plaintiff argues Judge Hawley incorrectly found the ALJ did not present any questions to the VE that the claimant was unable to do. However, Plaintiff's

10

argument simply expresses her dissatisfaction with the ALJ's consideration of and weighing of

conflicting evidence in the record. As Judge Hawley recognized, the ALJ's narrative "removed

any question as to how the weight of the evidence factored into the RFC assessment":

> [D]ue to the statements of the claimant and his mother regarding increased sensory issues when exposed to loud noisy environments, the claimant would need to be in a work setting that did not involve concentrated exposure to excessive noise. Due to his learning disorder, the claimant would be restricted to tasks that can be learned within thirty days and that are routine in nature. The claimant's significant difficulties in concentration, persistence, or maintenance of pace and his less significant but still problematic issues adapting or managing himself would warrant restrictions to a low stress work environment (meaning no more than occasional decision-making or changes in work setting) involving tasks that can be easily resumed after momentary distraction and with no hourly production quotas. Due to his difficulties with social interaction, the claimant should have no interaction with the general public in a work setting, no more than occasional interaction with coworkers or supervisors, and should not be required to perform tandem tasks. Overall, the claimant has failed to establish that he would be unable to perform a limited range of essentially unskilled socially undemanding work if so motivated.

AR 1132-33. The Court concurs with the Magistrate Judge's conclusion that the above "narrative

succinctly connected the dots between J.F.'s impairments, specifically the limitations caused by

those impairments which were supported by substantial evidence, and the mental RFC

assessment." Doc. 20, at 28.

### 3. Judge Hawley erred in accepting the ALJ's conservative assessment of the number of absences J.F. would have from work. (*Id.* at 12)

Next, Plaintiff observes that Judge Hawley stated that the ALJ asked the VE to consider if

the claimant had routine unscheduled absences two days per month, and the VE responded that

he would not be able to maintain employment beyond a few months. Plaintiff again argues this

finding goes against the evidence of J.F.'s numerous absences from school. Yet the Magistrate

Judge and the ALJ addressed this argument and found the record did not support the extent of

J.F.'s absences or health issues.

Finally, in the domain of health and physical well-being, the ALJ considered J.F.'s 2018 hearing testimony that he was not seeing a doctor and was not taking any medication, Jamie's 2018 testimony that J.F. did have asthma but it was not something that really affected him, and Jamie's 2012 testimony regarding the frequency of J.F.'s common illnesses was not supported by the medical records, and even if he was ill as often as alleged, it was not significant enough for him to require medical care. The ALJ noted that while school records referenced J.F. has having a lot of health issues and missing school as a result, the records from J.F.'s primary care provider Jamie submitted in January 2018 ended in 2013. "Therefore, it does not appear that the claimant has gone to the doctor in years, suggesting that he has not experienced any significant physical health issues in recent years." AR 1121.

Doc. 20, at 22. The Court agrees with the Magistrate Judge's analysis and therefore rejects Plaintiff's third objection.

### 4. Judge Hawley erred when he found the ALJ built a logical bridge to the conclusion J.F. was not disabled. (*Id*. at 15)

Plaintiff's next argument stems from the faulty premise that the ALJ failed to consider certain evidence and testimony offered by Jamie. But as discussed above and in the Magistrate Judge's Report and Recommendation, the ALJ reasonably compared and contrasted the evidence and adequately explained the bases for his conclusions.

### 5. Judge Hawley erred regarding the ALJ's finding that the consulting examiner did not diagnosis J.F.'s sensory disorder. (*Id*. at 16)

Plaintiff next observes that the ALJ did not find sensory modulation disorder as a medically determinable impairment. To the extent this observation suffices as an objection, it is meritless because, as the Magistrate Judge found, any error was harmless:

The ALJ took issue with the fact that it appeared the OTs did not do any independent evaluation of J.F. with respect to any possible sensory issues in 2010 or 2016, and the fact that the 2016 evaluation also included a self-assessment by J.F. The ALJ therefore rejected sensory modulation disorder as a medically determinable impairment because, "Neither a teacher assessment nor the claimant's self-assessment are sufficient to establish the existence of a medically determinable impairment." AR 1066. The ALJ's articulated reasons for rejecting as a severe medically determinable impairment sensory modulation disorder permits the Court

12

to trace the path of her reasoning. *See Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (stating that an ALJ must "sufficiently articulate his assessment of the evidence to assure us that the ALJ considered the important evidence . . . and to enable us to trace the path of the ALJ's reasoning"). Even assuming the ALJ would have found such an impairment at Step Two had she found the assessments were done by the OTs as acceptable medical sources, no harm ultimately came to J.F. At Step Three, the ALJ exhaustively and repeatedly discussed evidence pertaining to J.F.'s sensory issues.

Doc. 20, at 12–13. Based on the above, the Court agrees with Magistrate Judge Hawley that any

error at Step Two was harmless.

**6. Judge Hawley erred in agreeing with the ALJ's justification for not providing the most recent records to the consulting examiner. (*Id*. at 17)**

Plaintiff next argues the ALJ erred when he allowed Dr. Lana to evaluate J.F. without the

benefit of J.F.'s most recent records. However, as explained in detail by both the AJL and the

Magistrate Judge, the lack of records was attributable to Jamie failing to deliver them to DDS in

a timely manner. Moreover, the error was harmless.

Jamie questions why Dr. Lana was not provided with J.F.'s updated records, and she argues that "the fact remains" that Dr. Lana's evaluation results should carry great weight because even without J.F.'s records she properly aligned his conditions to that of what his teachers, psychologist, and therapist saw on a daily basis. The ALJ addressed Dr. Lana's statement in her evaluation that, "There are no recent records showing treatment or diagnoses or claim . . . There were no mental health records." AR 1129. The ALJ further detailed Jamie's challenge to that omission which questioned why the updated records she provided were not sent to Dr. Lana. The ALJ pointed out: 1) Jamie hand-delivered J.F.'s 2012-13 medical records and his high school records "well after DDS has scheduled the examination, and due to that delay it was not possible for DDS to supply those records to Dr. Lana; 2) there was not any compelling evidence that having those records would have resulted in Dr. Lana setting forth any greater functional limitations (2012-13 records provided no insight into mental functioning, there were no actual mental health records, no formal comprehensive evaluation by a school psychologist in recent years); and 3) even if Dr. Lana had access to school records, "the most likely outcome would be that she would have found the claimant less functionally limited, as the high school records do not support the degree of impairment she set forth based on the examination." AR 1130. Even if the Court were to find the ALJ erred by not ensuring Dr. Lana had the most up-to-date records, the error was harmless because the ALJ explicitly confronted that fact, explained it was not entirely due to the fault

13

> of DDS, and, most importantly, proceeded to consider the consistency of Dr. Lana's assessment with the evidence as a whole (the ALJ's obligation whether or not Dr. Lana had the additional evidence to which Jamie points). *See* 20 C.F.R. § 416.927(c)(3), (4) (providing that the consistency and supportability of a medical opinion will be considered in evaluating the weight to give that opinion).

Doc. 20, at 26 n.4. For the reasons stated by the Magistrate Judge, Plaintiff's sixth objection is without merit.

### 7. Judge Hawley erred when finding the ALJ did not "play doctor." (*Id*. at 18)

Jamie continues her previous argument by claiming the ALJ "played doctor" when he considered the records not available to Dr. Lana due to Plaintiff's own failure to timely produce them. The Magistrate Judge disagreed with this argument and so does this Court.

> The ALJ did not impermissibly play doctor. The record was slim insofar as actual medical records. There were, as Jamie argues, school records which included the signatures of J.F.'s school psychologists and OTs. But the fact that the ALJ considered those records and did not find disability based upon them does not automatically mean she played doctor in her consideration of them or that she improperly labeled medical evidence non-medical. *See, e.g., Heather M. v. Berryhill*, 384 F. Supp. 3d 928, 935 (N.D. Ill. 2019) (stating the ALJ did not impermissibly play doctor but instead "'played' ALJ and considered and assessed one report from a 'medical source' along with the rest of the medical evidence in the 1000-page record").

Doc. 20, at 22. Finally, the Court notes that if any error occurred with regard to analyzing Dr. Lana's report, it appears such error is attributable at least in part to Plaintiff's own failure to produce the records in a timely manner. Regardless, the Court concurs with the Magistrate Judge's findings on this issue.

### 8. Judge Hawley erred in assessing the ALJ's finding that sensory modulation disorder was not an objective medical finding because a teacher's assessment or a self-assessment is not objective medical evidence. (*Id*. at 20)

This argument rehashes Plaintiff's fifth objection and is rejected for the same reasons set forth above. The ALJ's rejection of sensory modulation disorder as a medically determinable

impairment was reasonable because, "[n]either a teacher assessment nor the claimant's self-assessment are sufficient to establish the existence of a medically determinable impairment." AR 1066. Doc. 20, at 12–13. *See also Fanta v. Saul*, No. 20-2325, slip op. at 4 (7th Cir. Mar. 15, 2021) ("An ALJ has 'final responsibility' for determining a claimant's residual functional capacity and need not adopt any one doctor's opinion.") (citing 20 C.F.R. § 404.1527(d)(2); *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007)).

9.  **Judge Hawley erred in assessing the ALJ's finding that school records did not demonstrate the extreme difficulties alleged by the claimant and his mother. (*Id*. at 22)**

Plaintiff's next argument is another expression of her dissatisfaction with the ALJ's weighing of conflicting evidence and credibility findings. As part of her argument, Plaintiff claims J.F. was required to be in a one-on-one classroom and the ALJ was therefore factually incorrect when he found J.F. could participate in a small group setting. *Id*. at 22. However, the ALJ found that assertion unsupported by the school records. AR 1086. More generally, the Magistrate Judge addressed Plaintiff's qualms with this portion of the ALJ's assessment.

> In support of her finding that J.F. had "moderate" limitation in interacting with others (social functioning), the ALJ found the evidence indicated J.F. had behavioral problems, but the evidence also suggested he could be generally well behaved when he wanted to be. The ALJ expressly considered evidence dated between November 2010 and May 2018. She highlighted that J.F. had no suspensions or detentions as of November 2012 which was a "significant improvement" over the prior school year, Jamie's testimony as to J.F.'s 23 pages of discipline records in the file was misleading as many of the pages related to the same event and many involved J.F.'s tardiness (especially his last two years of high school), punishment for his use of profanity decreased to no punishment in his final year of school, and IEPs indicated J.F. could be polite and helpful. The ALJ also pointed out that school records stated J.F. enjoyed working with his classmates in a small group setting, and in that setting, J.F. was successful participating/focusing on activities or lessons. The ALJ determined those school records contradicted Jamie's testimony that J.F. had to be in a one-on-one classroom and her testimony that there was no way he could be around other students without becoming upset.

The ALJ had "no doubt the claimant has some sensory issues that impact social functioning," but J.F.'s school records did not demonstrate extreme difficulties alleged by J.F. and his mother; those school records did not support that J.F. acted violently when his sensory issues were set off. The ALJ concluded that, instead, the evidence suggested J.F. was capable of comporting himself generally, especially when in a setting where interaction with others was more limited.

The ALJ supported her finding of J.F.'s "marked" limitation in concentration, persistence, or pace with evidence of, among other things, a very serious problem working without distracting himself or others, serious problems focusing long enough to finish assigned activities or tasks, a constant need for praise and attention, need for a high level of structure and frequent breaks to complete his lessons, and his annoyance caused by the repetition of the task loading and unloading the washer or dryer. On the other hand, there was evidence that he worked hard on completing tasks in a small group setting, his focus had significantly improved since the beginning of his freshman year, he could be brought back to task by asking him a question, and he spent his time playing video or computer games. The foregoing evidence cited by the ALJ supports her conclusions that J.F. could persist with tasks that he enjoyed, that school records suggested improvement in task completion in late 2016 though he continued to receive a variety of accommodations to help him concentrate and persist with tasks, and that:

> The overall evidence of record suggests that with rare exceptions, such as the video or computer games, the claimant has considerable difficulty maintaining concentration, persistence, or pace on typical daily tasks and on his school work without accommodations and that his problems with attention and task completion at school significantly compromise his already diminished academic abilities. AR 1080.

Doc. 20, at 16–18. Because the above shows the ALJ did not commit factual error but rather appropriately weighed conflicting evidence and arrived at a reasonable conclusion, Plaintiff's ninth objection fails.

**10.  Judge Hawley erred by not reweighing the evidence to arrive at a different conclusion than the ALJ. (*Id*. at 36)**

Plaintiff also takes issue with the weight the ALJ gave to physical limitations based on evidence of J.F.'s sensory issues. Again, the ALJ did not commit factual error but rather appropriately weighed conflicting evidence and arrived at a reasonable conclusion. This objection likewise fails.

16

**11.  Judge Hawley erred in agreeing with the ALJ that medical weight should not be given to claimant's OT therapist's evaluation and the error was not harmless. (*Id*. at 38–39)**

This argument was addressed above in analyzing Plaintiff's fifth objection. For the same reasons stated above, this objection fails.

**12. The Court should reweigh the evidence. (*Id*. at 41)**

Plaintiff next asserts the ALJ's credibility determinations should be revisited because Plaintiff's testimony was creditable and consistent with the objective medical evidence. This objection largely repackages Plaintiff's other objections, arguing the ALJ should have weighed the evidence differently. However, "[w]hen reviewing for substantial evidence, [the Court] do[es] not displace the ALJ's judgment by reconsidering facts or evidence or making credibility determinations." *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010). Accordingly, this objection is denied.

**13. Judge Hawley erred in finding the ALJ's less than marked limitation in social functioning was appropriate where the ALJ made credibility determinations and referenced J.F.'s ability to play video games. (*Id*. at 45)**

Plaintiff's next argument posits the ALJ's finding of less than marked limitation in social functioning was flawed because it relied upon J.F.'s strengths as listed in an IEP report and the ALJ used it as a major factor in giving J.F. the less than marked limitation. Again, this objection fails because the ALJ did not improperly cherry-pick evidence but rather weighed conflicting evidence to arrive at a reasonable conclusion. As recounted by the Magistrate Judge, the ALJ considered:

> evidence of J.F.'s constant participation in special education classes, his academic deficits, his poor performance in certain years compared with improved

17

performance in others, his receipt of special aids/accommodations in school, observation that J.F. was a very capable student, observations that J.F.'s behavior impacted his academic career, his limited social skills, and statements that attendance significantly impacted J.F.'s academic performance. The ALJ also detailed Jamie's testimony that J.F. melted down in response to stress and J.F. had sensory modulation disorder as well as tactile defensiveness, J.F.'s testimony that changes in the environment bothered him, and J.F.'s father's testimony that J.F.'s performance of even simple tasks required redirection. In her consideration of each of the six domains, the ALJ contrasted the evidence of J.F.'s deficits with evidence of improvement under certain conditions, where J.F. exhibited strengths, and when he engaged in conduct that showed capabilities beyond those alleged.

Doc. 20, at 20. For these reasons, Plaintiff's thirteenth objection fails.

**14.  Judge Hawley erred in accepting the weight the ALJ assigned to J.F.'s behavioral problems. (*Id*. at 49)**

Plaintiff also argues the ALJ should have assigned more weight to J.F.'s behavioral problems. Again, Plaintiff is arguing the ALJ should have weighed the evidence differently. However, "[w]hen reviewing for substantial evidence, [the Court] do[es] not displace the ALJ's judgment by reconsidering facts or evidence or making credibility determinations." *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010). The ALJ did not improperly cherry-pick evidence but rather weighed conflicting evidence to arrive at a reasonable conclusion Accordingly, this objection is denied.

**15. Judge Hawley erred in finding that one note in the record did not undermine the ALJ's finding of moderate impairment and understanding and applying information where the ALJ did not ignore evidence contrary to her finding. (*Id*. at 60)**

Plaintiff's next objection again centers on the ALJ's assessment of conflicting evidence. As the Magistrate Judge explained,

The ALJ found J.F. had "moderate" impairment in understanding, remembering, and applying information as the evidence suggested he had some significant

18

cognitive deficits. Jamie takes issue with the ALJ's conclusion that J.F.'s ability to learn and succeed in class was compromised by his behavior and attendance issues. She cites to a November 2010 record which indicated that although J.F. had poor attendance at school, his fundamental learning delays appeared to be the primary factor contributing to his learning disability. That one note in the record does not undermine the ALJ's finding of moderate impairment in understanding, remembering, and applying information where the ALJ did not ignore evidence contrary to her finding. *See Spicher v. Berryhill*, 898 F.3d 754, 757 (7th Cir. 2018) (stating that "an ALJ may not ignore evidence that undercuts [his] conclusion"). For instance, the ALJ noted IQ testing indicated Low Average to Average IQ, although school assessments suggested lower academic achievement than IQ testing would suggest. However, the ALJ also noted J.F.'s ability to obtain average grades and even As, Bs, or Cs on individual assignments in particular classes, and his academic performance improved when he was at school more consistently. She considered a November 2012 IEP which provided that James was a very capable student, but his behavior regularly impacted his academic career. She pointed out the significant improvement in J.F.'s scores between 2010 and 2016, although he was to be given a variety of accommodations/modifications, including receipt of oral and written directions, test items read to him, and the assistance of a scribe for longer assessments. Telling to the ALJ was J.F.'s testimony that he spent his time playing video or computer games, "suggesting he could understand and apply the rules/requirements of the games in order to progress towards the game goals." AR 1083. Thus, the ALJ considered the evidence which cut both ways but ultimately determined the weight of it more fully supported no more than moderate limitation in understanding, remembering, and applying information.

Doc. 20, at 15–16. The Court agrees with the Magistrate Judge's conclusion on this issue: the ALJ considered the evidence which cut both ways but ultimately determined the weight of it more fully supported no more than moderate limitation in understanding, remembering, and applying information. Again, this objection fails because the ALJ did not improperly cherry-pick evidence but rather weighed conflicting evidence to arrive at a reasonable conclusion.

### 16.  Judge Hawley erred in accepting the ALJ's weighing of conflicting evidence regarding J.F.'s academic abilities. (*Id*. at 66–67)

Plaintiff's arguments relating to the ALJ's weighing of evidence have been discussed at length above. Here, Plaintiff takes issue with the ALJ's reference to J.F.'s ability to play video games and conflicting evidence regarding the reasons for J.F.'s absences from school. "When

19

reviewing for substantial evidence, [the Court] do[es] not displace the ALJ's judgment by reconsidering facts or evidence or making credibility determinations." *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010). The ALJ did not improperly cherry-pick evidence but rather weighed conflicting evidence regarding J.F.'s attendance and academic abilities to arrive at a reasonable conclusion. Accordingly, this objection is denied.

### 17.  Judge Hawley erred regarding the ALJ's sensory profile analysis. (*Id*. at 68)

Finally, Plaintiff argues that the ALJ's finding that J.F.'s sensory issues improved from 2010 to 2016 is factually incorrect because J.F. had a second Sensory Profile evaluation done in 2016. This argument appears to be a continuation of other arguments made earlier in Plaintiff's Objection. *See* Doc. 25, at 29. The document Plaintiff refers to references J.F.'s impulsivity and inattention, yet it is dated September 23, 2010. AR. 765. Thus, Plaintiff fails to direct the Court to the location in the record where a second 2016 evaluation was done. More significantly, however, Plaintiff fails to explain how this record contradicts the ALJ's findings and how she suffered prejudice as a result. Accordingly, this argument is underdeveloped and the Court considers it waived.

**CONCLUSION**

For the reasons set forth above, the Court adopts the Magistrate Judge's Report and Recommendation (Doc. 20), grants Defendant's Motion (Doc. 18) for Summary Judgment, and denies Plaintiff's Motion (Doc. 17) for Summary Judgment.

This matter is now terminated.

Signed on this 25th day of March, 2021.

s/ James E. Shadid
James E. Shadid
United States District Judge